UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

HENRY JOHNSON,

                        Petitioner,

    v.

ISIDRO BACA, *et al.*,

                       Respondents.

Case No. 3:18-cv-00521-MMD-WGC

ORDER

This is a habeas corpus proceeding under 28 U.S.C. § 2254 brought by Petitioner Henry Johnson, a Nevada state prisoner who is represented by counsel. Currently before the Court is Respondents' Motion to Dismiss (the "Motion") (ECF No. 28). Johnson has opposed the Motion, and Respondents have replied. (ECF Nos. 35, 42.) For the reasons discussed below, Respondents' motion is granted.

## I.    BACKGROUND

### A.    State Criminal Proceedings

Johnson challenges a conviction and sentence imposed by the Eighth Judicial District Court for Clark County ("state court"). *See State of Nevada v. Johnson*, Case No. C-13-287509-1. In February 2013, he entered a guilty plea to two charges of lewdness with a child under the age of 14. (ECF No. 29-11.) The state court sentenced Johnson to two consecutive sentences of life with eligibility for parole after a minimum of 10 years. (ECF No. 29-16.) An amended judgment of conviction was entered on October 21, 2013. (ECF No. 29-19.) No direct appeal was filed.

### B.    State Post-Conviction Proceedings

Johnson filed a *pro se* state petition for writ of habeas corpus in April 2017, seeking post-conviction relief. (ECF No. 29-27.) He alleged his trial counsel was ineffective for failing to file a direct appeal. The state court held an evidentiary hearing and denied the

state petition as time-barred. (ECF Nos. 29-37, 32-2.) The Nevada Court of Appeals affirmed in August 2018.[1] (ECF No. 32-7.)

### C.    Federal Habeas Proceedings

Johnson's original federal habeas petition was filed on October 31, 2018. (ECF No. 5.) The Court denied his pauper application and ordered him to pay the five-dollar filing fee within 30 days. (ECF No. 4.) Johnson failed to respond to the order. Upon further consideration of the petition and taking judicial notice of Johnson's underlying state criminal proceedings, the Court noted that Johnson's allegations may support equitable tolling. (ECF No. 6.) "As the arguments supporting a claim of equitable tolling might require an evidentiary hearing to resolve and at a minimum require further review of the state court record," the Court appointed the Federal Public Defender to represent Johnson and granted leave to amend the petition. (*Id.*; ECF No. 9.) He filed a counseled Amended Petition for Writ of Habeas Corpus (ECF No. 19) ("Amended Petition") in November 2019, alleging three grounds for relief under of the Fifth, Sixth and Fourteenth Amendments:

> Ground One: Johnson's attorney ineffectively failed to investigate or present essential mitigation at Johnson's sentencing hearing.
>
> Ground Two: Johnson's trial attorney ineffectively failed to investigate his incompetency and mental status, which led to Johnson taking a plea that was not knowing and voluntary.
>
> Ground Three: Johnson's trial attorney ineffectively failed to consult with him about a direct appeal or to file a direct appeal.

(*Id.* at 4-14.)

Respondents now move to dismiss the petition as untimely, partially unexhausted, and procedurally defaulted.

---

[1]In November 2018, Johnson filed a second state petition (ECF No. 32-8), which was denied as time-barred and successive (ECF No. 32-17). He did not appeal. Johnson filed a third state petition in January 2019 (ECF No. 32-12), which was also denied as time-barred and successive (ECF No. 32-22). He did not appeal. In January 2019, Johnson also filed an original petition for writ of habeas corpus before the Nevada Supreme Court, raising the same grounds as the third state petition. (ECF No. 32-13.) However, the court declined to exercise its original jurisdiction over the matter and denied the petition. (ECF No. 32-14.)

## II.    DISCUSSION

### A.    Timeliness

The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a one-year period of limitations for state prisoners to file a federal habeas petition pursuant to 28 U.S.C. § 2254. The one-year limitation period, *i.e.*, 365 days, begins to run from the latest of four possible triggering dates with the most common being the date on which the petitioner's judgment of conviction became final by either the conclusion of direct appellate review or the expiration of the time for seeking such review. *See* 28 U.S.C. § 2244(d)(1)(A). Statutory tolling of the one-year time limitation occurs while a "properly filed" state post-conviction proceeding or other collateral review is pending. 28 U.S.C. § 2244(d)(2). A state petition for post-conviction relief that violates the state statute of limitations is not "properly filed" for the purposes of § 2244(d)(2). *Pace v. DiGuglielmo*, 544 U.S. 408, 412-16 (2005).

Johnson concedes that his one-year AEDPA limitation period expired on November 20, 2014, and he did not file his federal petition until October 31, 2018. He argues, however, that he is entitled to equitable tolling to excuse his untimeliness.

### B.    Equitable Tolling

The Supreme Court has held that AEDPA's statute of limitations "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). However, equitable tolling is appropriate only if (1) a petitioner has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. *See id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). To satisfy the first element, a petitioner "must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing." *Smith v. Davis*, 953 F.3d 582, 598-99 (9th Cir. 2020) (en banc). It is not enough for a petitioner "to attempt diligently to remedy his extraordinary circumstances; when free from the extraordinary circumstance, he must also be diligent in actively pursuing his rights." *Id.* at 599. However, "the diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible

diligence'." *Id.* (quoting *Holland*, 560 U.S. at 653). To satisfy the second element, a petitioner must show that the "extraordinary circumstances" were the *cause* of his untimeliness. *Grant v. Swarthout*, 862 F.3d 914, 926 (9th Cir. 2017). In other words, "that some external force caused his untimeliness, rather than mere oversight, miscalculation or negligence." *Velasquez v. Kirkland*, 639 F.3d 964, 969 (9th Cir. 2011) (internal quotation omitted). "The petitioner bears the burden of demonstrating that he or she is entitled to equitable tolling." *Stancle v. Clay*, 692 F.3d 948, 953 (9th Cir. 2012) (citing *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006)).

### 1.    Relevant Evidence

Johnson argues that he is entitled to equitable tolling based on misleading state court minutes and attorney abandonment. The following evidence is relevant to his claim.

In February 2013, Johnson pleaded guilty to two counts of lewdness with a child under the age of 14.[2] (ECF No. 29-10.) During the plea canvas, Johnson stated that he understood the state court was required to sentence him to life with the possibility of parole beginning after 10 years as to each count, he was giving up certain constitutional rights,[3] and he would be subject to lifetime supervision and sex offender registration requirements.

---

[2]The guilty plea agreement ("GPA") negotiated a significant reduction in charges as the amended criminal complaint filed in December 2012 charged Johnson with 25 counts of lewdness with a child under the age of 14; 12 counts of sexual assault with a minor under 14 years of age; and one count of child abuse, neglect, or endangerment with substantial bodily harm, sexual abuse, or exploitation. (ECF No. 29-5.)

[3]The GPA contained an express waiver of appellate rights:

By entering my plea of guilty, I understand that I am waiving and forever giving up the following rights and privileges: … The right to appeal the conviction with the assistance of an attorney either appointed or retained unless specifically reserved in writing and agreed upon as provided in NRS 174.035(3). I understand this means I am unconditionally waiving my right to a direct appeal of this conviction, including any challenge based upon reasonable constitutional, jurisdictional or other grounds that challenge the legality of the proceedings as stated in NRS 177.015(4). However, I remain free to challenge my conviction through other post-conviction remedies including a habeas corpus petition pursuant to NRS Chapter 34.

(ECF No. 29-11 at 5-6, ¶ 6.)

(ECF No. 29-10 at 5-6.) Under the GPA, the State retained the right to argue regarding concurrent or consecutive sentences. (*Id.* at 2; *see also* ECF No. 29-15 at 4.)

Prior to sentencing, prosecutors informed the state court that Johnson was previously convicted of incest in 1985. (ECF No. 29-14 at 7; *see also* ECF No. 22-4 at 5.) Deputy public defender Julia Murray filed a memorandum of mitigating circumstances, alerting the state court that Johnson was 63 years old and in poor health. (ECF No. 29-15 at 5.) Murray explained that Johnson served 26 years with the Drug Enforcement Agency and was a decorated Army veteran of both the Vietnam and Korean wars. (*Id.* at 4-5.) Murray disclosed that Johnson suffers from psychiatric illnesses such as bipolar disorder, requiring medication, and has "struggled with Post-Traumatic Stress Disorder for almost forty (40) years" stemming from his Army service. (*Id.*) Murray further revealed that Johnson was himself a "victim of abhorrent physical and sexual abuse as a child at the hand of his biological father." (*Id.* at 5.)

The state court ultimately sentenced Johnson to consecutive sentences in August 2013, and an amended judgment of conviction was entered in October 2013. (ECF Nos. 29-16, 29-19.)

In April 2014, Johnson filed *pro se* motions for production of documents, papers, pleadings, and tangible property and to withdraw Murray as counsel. (ECF Nos. 29-21, 29-22.) The state court heard the motions on May 15, 2014, and its minutes state the following:

> Mr. Bonaventure stated that *the case is on appeal*. COURT ORDERED, Defendant's Motion for Production of Documents, Papers, and Pleadings and Tangible Property of Defendant is GRANTED.
>
> FURTHER, Motion to With [*sic*] Counsel is GRANTED. Ms. Murray is to provide a one page document verifying that the requests are sent to the defendant.

(ECF No. 29-2 at 22 ("May 2014 minutes") (emphasis added).)

Two months later, in July 2014, Johnson sent a request for a transcript of his sentencing hearing to the state court clerk's office. (ECF No. 29-24.) Approximately two-and-a-half years later, in December 2016, Johnson wrote to the state court clerk's office asking for transcripts of "the pre-trial hearings and the sentencing hearing" for "post-

conviction filings." (ECF No. 29-2 at 50.) In March 2017, he sent a letter to the clerk's office, stating that he was "currently working on a habeas corpus petition" and requesting copies of certain case documents. (*Id.* at 53.)

Johnson filed the state petition on April 26, 2017, alleging that Murray was ineffective for failing to file a direct appeal. (ECF No. 29-27.) The state court held an evidentiary hearing in October 2017, to hear testimony regarding whether Johnson asked for an appeal. (ECF No. 29-37 at 3.) Murray testified that she went over the entire GPA with Johnson and was present when he signed it. (*Id.* at 11.) She explained that her typical practice is to go through each of the paragraphs with a client, including the appellate waiver, and explain the practical implications and exclusions:

> [The appellate waiver] does not, however, bar you from either appealing an illegality that occurs during the course of the sentencing or from coming back and saying that I did something after the fact, such as lied to you about the sentencing ranges, misled you, or did some other thing that would cause you another avenue towards appeal.

(*Id.* at 12-13.) As an experienced deputy public defender, Murray testified that she believed Johnson was well aware of and involved in the plea negotiations. (*Id.* at 14.)

Murray testified that she did not have any contact with Johnson after sentencing until she was notified by the May 2014 minutes of the withdrawal and file request. (*Id.*) She then wrote him a letter enclosing a copy of his file. (*Id.*) In June 2017, Murray received a letter from Johnson stating that he no longer had the file she previously sent him and asking if she would send him a second copy of anything she still retained. (*Id.* at 14-15.) Murray replied the following month with the documents he requested. (*Id.*) Murray testified that the public defender's office has an established practice for client letters and keeps a record of the same, and the two letters she testified about were the only written correspondence the public defender's office received from Johnson post-sentencing. (*Id.* at 15-16.)

Murray further testified that she did not recall Johnson verbally asking her to appeal the conviction or expressing dissatisfaction with his conviction and sentence. (*Id.* at 16-18.) She said she discussed the life sentences with him prior to sentencing:

THE COURT: Okay. And you obviously had discussed the possibility of the

life, consecutive life sentences with Mr. Johnson prior to the sentencing?

THE WITNESS: It was a foregone conclusion that there would be life sentences on this case. The nature of the charge it was pled to has a life tail. It was a matter of whether that life tail ran concurrent or consecutive.

THE COURT: Concurrent or consecutive.

THE WITNESS: Precisely.

THE COURT: All right. And you discussed the possibility that it could be consecutive?

THE WITNESS: And that this particular case very much lent toward the scenario where I could see that happening.

(*Id.* at 18.) Murray testified that a notice of appeal would have been filed if there had been any conversation of an appeal at the time of sentencing or thereafter. (*Id.* at 19.)

Johnson also testified as to his recollection after sentencing:

I thought I made it quite clear to Ms. Murray that I did want a appeal, especially when the sentencing was done. I remember asking her I want to appeal, this is unfair, because my wife was supposed to get – not go to prison for eight years. And so I asked her, and I'm pretty sure of it, that I wanted to take and I wanted to appeal the case. I said this is something that's not right.

After that, I didn't even talk to her again.

(*Id.* at 24.)

Johnson testified that he also wrote Murray a letter asking her to file an appeal because he could not call her. (*Id.* at 25 ("You can't – in prison you can't call.").) But he "got no result back from the letter" so he sent a second letter asking Murray for the status of the appeal. (*Id.* at 26.)

Johnson testified he was unaware that Murray had not filed an appeal for him:

I didn't know because when I got the court minutes that showed Mr. Bonaventure stating that I – my sentence is on appeal. And that was in the court minutes. At that time, the – I thought, okay, it's on appeal. How long does it last? I have no idea, I'm not a legal man.

Due to my crime, I can't go walk up to one of the jailhouse lawyers and say I'd like you to take my case. I could get myself killed that way….

So I didn't do that. I just waited and waited and waited. Got to the point, I figured, I'm going to call the Public Defender's Office, ask them what is – where my case is.

1   (*Id.* at 26.) According to Johnson, he finally learned no appeal was filed when he contacted

2   the public defender's office in March 2017 and spoke to a different attorney. (*Id.* at 38.) He

3   filed the state petition the following month.

4         On cross-examination, Johnson was asked about the May 2014 minutes, which

5   informed him the state court granted his *pro se* motions to obtain his case file and withdrew

6   Murray from the case. (*Id.* at 34-36.) He testified that he "took the case back," *i.e.*, moved

7   for Murray's withdrawal, because "Murray was not doing anything" on his case. (*Id.* at 34.)

8   He wanted to get his case "packet" to file his state petition and a fellow inmate told him the

9   only way to do that was to have her withdrawn from the case. (*Id.* at 35.)

> Q Okay. And when you removed the Public Defender from the case, subsequent to that time did you do anything to put forward your appeal?
>
> A Well, if it was on appeal. Mr. Bonaventure said it was on appeal.
>
> THE COURT: Well, then why would you have fired the Public Defender?
>
> THE DEFENDANT: Because I hadn't heard from her and I didn't – I wanted to get a packet, my packet. I wanted to get my packet and I was told by one of the guys the only way I could get a packet is ask to her to be withdrawn from the case and then get a packet.
>
> THE COURT: But the reason you wanted your packet was to file for a post-conviction relief, right?
>
> THE DEFENDANT: Correct. And if they hadn't done it, which they didn't do evidently, then I would do it myself, or I would find somebody to do it….
>
> THE COURT: But you knew at the time that you were firing the Public Defenders that there was no appeal, right? That's why you fired them.
>
> THE DEFENDANT: No, I didn't know that.
>
> THE COURT: Okay, but you wanted to file for post-conviction, that's why you wanted your file?
>
> THE DEFENDANT: That's what my main thing. If I found out it was not filed then I was going to do that, but then I got the paper from Mr. Bonaventure, or the court minutes, that said it was.

23   (*Id.* at 35-36.)

24         The state court found that Johnson failed to establish good cause for the untimely

25   filing of the state petition. (ECF No. 32-2 at 5.) According to the state court, Johnson was

26   unable to explain his nearly three-year delay in filing for post-conviction relief. (*Id.*) The

27   state court found that he knew by April 2014 that no appeal had been filed, rejecting his

28   claim that he thought an appeal was pending as not credible. (*Id.*) Additionally, although

Johnson alleged that he mailed Murray letters in September 2013 and March 2014 requesting an appeal, the state court found that he failed to provide any evidence that such letters were actually transmitted or received. (*Id.* at 8-9.) Lastly, the state court found that the GPA and its appellate waiver belied Johnson's claim. (*Id.* at 9.) For these reasons, the state petition was dismissed as procedurally barred. (*Id.* at 10.) The Nevada Court of Appeals affirmed the decision. (ECF No. 32-7.)

### 2.   Misleading Court Orders and Attorney Abandonment

Johnson contends that the combination of the misleading May 2014 minutes and Murray's abandonment are an extraordinary circumstance justifying equitable tolling.

Equitable tolling may be appropriate where a court misleads a habeas petitioner. *See Pliler v. Ford*, 542 U.S. 225, 234 (2004); *Sossa v. Diaz*, 729 F.3d 1225, 1235 (9th Cir. 2013). However, even where a court order is misleading, equitable tolling will be denied if the petitioner does not exercise reasonable diligence. *See, e.g.*, *Melancon v. Kaylo*, 259 F.3d 401, 408 (5th Cir. 2001) (despite "district court's error in setting the return date of the application," equitable tolling was not appropriate because petitioner unreasonably delayed filing his federal petition). Likewise, the petitioner must demonstrate a causal relationship between the court's alleged misleading statement and the untimely filing of the federal petition to warrant equitable tolling. *See, e.g.*, *Wade v. Battle*, 379 F.3d 1254, 1265-66 (11th Cir. 2004) (although state court's order may have been misleading, it did not delay filing of federal petition since order was issued after petitioner had already filed federal petition).

"Equitable tolling may be warranted in instances of unprofessional attorney behavior; however, the AEDPA deadline will not be tolled for a garden variety claim of excusable attorney neglect or mistake." *Doe v. Busby*, 661 F.3d 1001, 1011-12 (9th Cir. 2011) (citing *Spitsyn v. Moore*, 345 F.3d 796, 800-02 (9th Cir. 2003)). The attorney's misconduct must be "a *sufficiently egregious* misdeed like malfeasance or failing to fulfill a basic duty of client representation" to warrant equitable tolling. *Id.* at 1012 (citing *Spitsyn*, 345 F.3d at 801). Trial counsel's failure to file a direct appeal is not an extraordinary

1   circumstance warranting equitable tolling when counsel's alleged negligence has no causal
2   connection to a petitioner's ability to file timely federal habeas petition. *See Randle v.*
3   *Crawford*, 604 F.3d 1047, 1058 (9th Cir. 2010).

4          Johnson contends that the May 2014 minutes erroneously led him to believe that an
5   appeal was pending, so he waited to file his state petition until the appeal concluded. (ECF
6   No. 35 at 2-15.) However, no appeal was ever filed, and he maintains he did not learn of
7   the mistake for nearly three years. He argues he exercised reasonable diligence because,
8   once he found out there was no appeal, he filed the state petition within a month, litigated
9   the state petition and a post-conviction appeal to conclusion, and then swiftly filed a federal
10  petition within two months. Johnson further claims that he demonstrated to Murray that he
11  wanted an appeal by telling her after sentencing and mailing her letters requesting an
12  appeal. But for the misleading May 2014 minutes and Murray's failure to file an appeal,
13  Johnson asserts he would have filed timely state and federal petitions, and the combination
14  qualifies as an "extraordinary circumstance" justifying equitable tolling.

15         Respondents argue that the facts before, during, and after the alleged extraordinary
16  circumstance show that Johnson did not diligently exercise his rights. (ECF No. 42 at 2-5.)
17  They acknowledge that the May 2014 minutes erroneously report that an appeal was
18  pending but argue Johnson cannot show he diligently pursued his rights thereafter. Based
19  on the GPA and Murray's testimony, Respondents maintain that Murray never agreed to
20  file an appeal for Johnson, and he failed to file a notice of appeal to protect his appellate
21  rights or call Murray to inquire about the purported appeal for almost three years. They
22  point out that, if Johnson mailed Murray a letter in March 2014 requesting an appeal as he
23  claims, he waited until months after sentencing and entry of the amended judgment of
24  conviction when the time for filing a notice of appeal was already expired. They further
25  contend Johnson should have noticed that the case file he received from Murray did not
26  contain any appellate documents and then contacted Murray to confirm whether the appeal
27  was timely filed. Additionally, they assert that he should have filed a protective petition in
28  federal court once he learned an appeal was never filed instead of waiting approximately

1   19 additional months to file his federal petition.

2       Here, Johnson fails to show that he was reasonably diligent in pursuing his rights or

3   that the alleged extraordinary circumstance caused his untimeliness, even though the May

4   2014 minutes may have misled him to believe an appeal was pending. *See Lott v. Mueller*,

5   304 F.3d 918, 922-23 (9th Cir. 2002) (stating that the district court must examine whether,

6   notwithstanding the extraordinary circumstances, the petitioner could have filed a timely

7   petition). According to his evidentiary hearing testimony Johnson filed the *pro se* motions

8   in April 2014 to accomplish two objectives: (1) to secure Murray's withdrawal from the case;

9   and (2) to obtain his case file for purposes of seeking post-conviction relief. He achieved

10   both goals. The state court granted his motions and Murray testified that she sent Johnson

11   a copy of his case file in May 2014. Johnson does not contest that portion of her testimony.

12   At the time, several months remained to file either a timely state or federal habeas petition.

13       The record before the Court demonstrates that the error in May 2014 minutes did

14   not prevent Johnson from filing a federal petition by the November 20, 2014 AEDPA

15   deadline. Johnson mailed multiple letters to the state court clerk's office from July 2014 to

16   March 2017 requesting transcripts and case documents prior to filing the state petition in

17   April 2017. (*See, e.g.*, ECF No. 29-24; ECF No. 29-2 at 50, 53.) Johnson's letters

18   demonstrate two things. First, since he was able to send letters to the state court clerk's

19   office during that time period, he was capable of inquiring with the Nevada Supreme Court

20   by mail regarding the status of his purported appeal. Thus, Johnson did not act diligently

21   by waiting nearly three years to hear back from Murray or another attorney from the public

22   defender's office. Second, Johnson's letters show that nothing stood in his way to prevent

23   him from filing a federal petition. Johnson does not allege or provide documentation to

24   show that he submitted to prison officials, any grievance, inmate request forms, or

25   complaints regarding lack of access to the law library, or that he requested and was denied

26   federal form petitions. He thus provides no documents or proof to support his allegations

27   that he diligently pursued his rights but the May 2014 minutes prevented him from timely

28   filing his federal petition.

The Court disagrees with Johnson's contention that it was "not unreasonable for him to believe an appeal had been filed and that the Clark County Public Defender's Office was continuing to litigate that appeal." (ECF No. 35 at 12.) Johnson testified that he filed the *pro se* motions because he had not heard from Murray about an appeal after sending her two letters. Even if the May 2014 minutes misled Johnson to believe that an appeal was pending, multiple inconsistencies would have led a petitioner diligently pursuing his rights to inquire further, and to do so sooner than three years later. For example, the May 2014 minutes, Murray's cover letter with the case file, and the case file itself confirmed that Murray was withdrawn from the case. Moreover, the case file did not contain any appellate documents. The absence of appellate documents in a case file from public defender's office would lead a reasonably diligent petitioner to—at the very least—inquire further to protect his rights. Johnson testified that he could not learn the status of his appeal because he could not call the public defender's office. (ECF No. 29-37 at 25 ("[I]n prison you can't call.").) However, he later testified that he called the public defender's office in March 2017 and spoke to a different attorney who informed Johnson that no appeal was ever filed. (*Id.* at 38.) His testimony refutes the allegation that he could not call to check the status of the appeal.[4] For these reasons, it was unreasonable for Johnson to assume that Murray or another attorney from the public defender's office was pursing an appeal on his behalf after Murray was withdrawn from the case.

In addition, the record does not support a finding that Murray abandoned Johnson by failing to file a direct appeal. Johnson's testimony regarding a verbal request to Murray for an appeal after the sentencing hearing was equivocal. (ECF No. 29-37 at 24.) Murray credibly testified regarding their discussion of the appellate waiver and her recollection that Johnson did not request an appeal after sentencing. (*Id.* at 12-19.) Johnson alleges he wrote Murray two letters requesting an appeal in September 2013 and March 2014. (ECF No. 20-9 at 12-13.) However, copies of the letters were submitted as exhibits to his July

---

[4]As explained above, Johnson's letters to the state court clerk's office also demonstrate that he was capable of inquiring directly with the Nevada Supreme Court.

1   2017 reply in support of the state petition without any proof of mailing, such as a "brass

2   slip" indicating that Johnson requested a deduction from his inmate trust account for

3   postage. Murray testified that the public defender's office had an established practice for

4   scanning client letters into its internal database and forwarding the letter to the assigned

5   attorney for a response, and she did not receive any letter from Johnson requesting an

6   appeal. (ECF No. 29-37 at 15-16.) Johnson has not met his burden of showing he

7   communicated an appeal request to Murray. And even if Murray had failed to file an appeal,

8   equitable tolling would still not be warranted because her inaction had no effect on the

9   timeliness of Johnson's federal petition.[5]

10  In sum, Johnson filed his federal petition after the expiration of the AEDPA statute

11  of limitations. He has failed to meet the burden of establishing that he is entitled to equitable

12  tolling. Accordingly, the Amended Petition (ECF No. 19) is dismissed with prejudice as

13  untimely.

14  **III.   CERTIFICATE OF APPEALABILITY**

15  A district court is required to issue or deny a certificate of appealability when it enters

16  a final order adverse to a habeas petitioner, rather than waiting for a notice of appeal and

17  request for certificate of appealability to be filed. *See* Fed. § 2254 R. 11(a); 9th Cir. R. 22-

18  1(a).

19  Generally, a petitioner must make "a substantial showing of the denial of a

20  constitutional right" to warrant a certificate of appealability. 28 U.S.C. § 2253(c)(2); *Slack*

21  *v. McDaniel*, 529 U.S. 473, 484 (2000). Where a district court denies relief on procedural

22  grounds without reaching the underlying constitutional claim, the court applies a two-step

23  inquiry to decide whether a certificate of appealability is appropriate. *See Payton v. Davis*,

24  906 F.3d 812, 820 (9th Cir. 2018). A petitioner must show both that jurists of reason would

25  _____

26  [5]*See United States v. Buckles*, 647 F.3d 883, 890-91 (9th Cir. 2011) (counsel's
    failure to file a timely notice of appeal from a state conviction "had little to no bearing on

27  [petitioner's] ability to file a timely federal habeas petition. Counsel's failure . . . simply
    meant that [petitioner] had one year from the expiration of his time to file a notice of appeal

28  in which to initiate a federal habeas action—it did not prevent him from filing the petition.").

find it debatable (1) " 'whether the petition states a valid claim of the denial of a constitutional right'," and (2) " 'whether the district court was correct in its procedural ruling'." *Gonzalez v. Thaler*, 565 U.S. 134, 140-41 (2012) (quoting *Slack*, 529 U.S. at 484); *Payton*, 906 F.3d at 820 ("Both components must be met before [the Ninth Circuit] may entertain the appeal."). To meet the threshold inquiry, a petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *See Allen v. Ornoski*, 435 F.3d 946, 950-951 (9th Cir. 2006).

Applying this standard, the Court finds that no reasonable jurist would find this Court's dismissal of the Amended Petition to be debatable or wrong. The Court therefore denies Johnson a certificate of appealability.

**IV.   CONCLUSION**

It is therefore ordered that Respondents' Motion to Dismiss (ECF No. 28) is granted. Johnson's Amended Petition (ECF No. 19) is dismissed with prejudice as untimely.

It is further ordered that a certificate of appealability is denied, as reasonable jurists would not find the district court's dismissal of the petition as untimely to be debatable or wrong, for the reasons discussed herein.

The Clerk of Court is directed to seal Exhibit 45 (ECF No. 29-14) as it violates LR IC 6-1(2) by displaying the full name of the minor victim.

The Clerk of Court is further directed to enter final judgment accordingly, in favor of Respondents and against Johnson, dismissing this action with prejudice, and close this case.

DATED THIS 10th Day of March 2021.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE